## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BELINDA DENISE JONES,

      Plaintiff,      CIVIL ACTION NO. 09-CV-13426

vs.

      DISTRICT JUDGE JULIAN ABELE COOK

COMMISSIONER OF      MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION:**     This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 15) be GRANTED in part, Defendant's Motion For Summary Judgment (docket no. 16) be DENIED and that the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings as set forth herein.

***

**II.**     **PROCEDURAL HISTORY:**

Plaintiff filed an application for Supplemental Security Income on January 1, 2005 alleging that she had been disabled since December 31, 1999 due to depression and a low IQ. (TR 27, 43-45, 60-61). The Social Security Administration denied benefits. (TR 35-39). Administrative Law Judge Jerome B. Blum (ALJ) held a de novo hearing on January 4, 2007 and subsequently found that the claimant was not entitled to Supplemental Security Income because she was not under a disability within the meaning of the Social Security Act at any time through the date of the ALJ's May 22, 2007 decision. (TR 22, 26-27, 165). The Appeals Council declined to review the ALJ's

decision and Plaintiff commenced the instant action for judicial review. (TR 3-5). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A. Plaintiff and Witnesses' Testimony And Reports

Plaintiff's sister represented her at the hearing and also appeared as a witness. Plaintiff was thirty-seven years old at the time of the hearing. (TR 168). She has an eleventh grade education and did not attend special education classes. (TR 64, 168). When asked Plaintiff testified that her reading and writing are "okay." (TR 168). She does not drive because her license was suspended for drunken driving and "tickets." (TR 169). She gets around town now with friends. (TR 170). At the time of the hearing Plaintiff lived with her three children and an adult friend. (TR 170).

When asked whether she could perform her past work as a cashier Plaintiff testified that she could not because she does not like to be around people. (TR 172). Plaintiff testified that she takes Seroquel to help with sleeping, Lamictal for depression and Effexor for mood swings. (TR 172). Plaintiff testified that the medications help her but that even with the medication she feels that she cannot work anywhere. (TR 175). Plaintiff testified that Dr. Soni prescribed the medication but she does not see him anymore due to her insurance. She testified that she is supposed to get another doctor due to her Medicaid, but at the time of the hearing she had not yet found one. (TR 173). Plaintiff testified that she smokes one pack of cigarettes per day, and stopped drinking about two years prior to the hearing. (TR 175). Plaintiff testified that she had used marijuana but that she stopped "a long time ago." (TR 175).

On a Function Report Plaintiff reported that she takes care of her children when they are around and she is able to prepare snacks, sandwiches and complete meals with several courses all within an average time frame. (TR 87-88). Plaintiff reported that her hobbies are watching television and playing a video game. (TR 90). She reported that she attends weekly group therapy. (TR 90). Plaintiff reported that she can follow written instructions "OK" and "average for simple undetailed instructions." (TR 91). She reported that she follows spoken instructions "not too well" because she forgets them. (TR 91). It appears that Plaintiff's sister may have assisted in completing the Function Report because her name appears at the end of it with Plaintiff's name. (TR 93).

Plaintiff completed a Work Activity Report dated June 12, 2005 explaining that she was working despite her disability application. (TR 103-10). Plaintiff reported that she had been "trying extremely hard to get permanent employment, without success" and that she was trying to obtain and maintain temporary jobs "especially to get [her] children back from protective services." (TR 103). On a Disability Report– Appeal Plaintiff reported that since June 1, 2005 she had back problems and pain in her knees but was unable to seek medical care. She also reported that she was more depressed and discouraged because she was unable to obtain employment and could not get her children back from protective services. (TR 113-14).

Plaintiff's sister testified at the hearing. (TR 176). Plaintiff's sister testified that Plaintiff has "limited thinking ability," she cannot comprehend detailed instructions and she misinterprets instructions. (TR 176). Her sister testified that Plaintiff is very anti-social and does not like to be around people. (TR 177). She testified that Plaintiff lacks insight and cannot foresee the consequences of a particular course of action. (TR 177). Plaintiff's sister noted on a Function Report that Plaintiff "is very good at daily repetitive tasks, she keeps her house clean, she keeps her kids clean, well fed [and] looking good [and] she also keeps herself clean [and] well groomed." (TR

3

93).  Plaintiff's sister testified that Plaintiff is able to get up in the morning and take care of her children and walk her son to school, but she lacks people skills and the emotional stability necessary "to do anything." (TR 183).

Plaintiff's mother completed a Function Report Adult– Third Party and reported that during the day Plaintiff fixes breakfast, takes a bath or shower, watches television, plays cards, walks to the store and talks on the telephone. (TR 77).  Her mother reported that Plaintiff has no problem with personal care tasks and does not need reminders for those or for taking her medicine. (TR 78-79). Plaintiff's mother reported that Plaintiff is able to prepare her own meals in a normal amount of time and she also cleans, does laundry, irons, sweeps, mops and vacuums every day for a few hours. (TR 79).  This is consistent with Plaintiff's self-report.  (TR 87-88).  Her mother reported that Plaintiff goes out daily and walks or uses public transportation. (TR 80). Plaintiff's mother reported that Plaintiff has problems getting along with friends and described her as a "loner."  (TR 81). Plaintiff's mother reported that Plaintiff's conversation, memory, understanding, concentration and ability to understand and follow instructions have gotten progressively worse. (TR 82).  Her mother described her as getting along "all right" with authority figures. (TR 82).

### B. Medical Evidence

#### 1. *Mental Impairments*

On November 18, 2004 Plaintiff underwent a psychiatric evaluation with Pravin N. Soni, M.D.  (TR 143-46).  Dr. Soni noted Plaintiff's complaints that she had been depressed for a long time, was on probation, had been charged with child abuse and three of her children were taken away and put into a foster home, she had not drunk since she got out of jail for a DUI and she was in a "program" for substance abuse at the time of the evaluation. (TR 143-44). The doctor noted Plaintiff's report that she last had a beer in the middle of May 2004 and she last smoked marijuana

approximately three weeks prior to the evaluation. (TR 145). The doctor noted Plaintiff's report that she has been in jail more than six times and had four DUIs. (TR 144). The doctor noted Plaintiff's report that the incident of child abuse arose when she was drunk and threw things at her son. (TR 144). He noted Plaintiff's report of feeling hopeless, helpless, worthless and insecure with no motivation or energy and being unable to feel pleasure. (TR 144). According to the report Plaintiff described difficulty falling asleep, mood swings and being "snappy sometimes." (TR 144).

Dr. Soni described Plaintiff as "[a]lert, isolative, withdrawn, suspicious, guarded and at times evasive with neat and clean appearance and avoid (sic) direct eye contact and most of the time she is looking down." (TR 145). Her affect was reported as "constricted" and her mood "depressed." (TR 145). Her thought process was spontaneous and coherent. (TR 145). Plaintiff denied hallucinations but expressed paranoid ideations and had no suicidal ideation or dangerous ideation for others. (TR 145). The doctor opined that Plaintiff's memory was intact, concentration, attention span, insight and judgment were impaired and her prognosis was guarded. The doctor diagnosed major depressive disorder (single episode– moderate), alcohol abuse, noted to rule out bipolar disorder and assigned a GAF of 50. (TR 146). Dr. Soni recommended "periodic psychotropic medication evaluation," psychotherapy, crisis intervention as needed and AA meetings. (TR 146). In March 2005 Dr. Soni opined that Plaintiff would be able to manage her benefit funds. (TR 151).

Plaintiff underwent a psychological assessment and mental status evaluation with Samuel I. Goldstein, Ph.D., licensed psychologist, on May 14, 2005. (TR 159-63). Dr. Goldstein reported that the "client indicates interestingly that she really doesn't want to work. What she would like to do is have her children back and raise them. She is working because 'FIA said I had to.'" (TR 160). The doctor noted that Plaintiff also reported that she does not like to be around people. (TR 160).

5

The doctor interviewed Plaintiff's sister and noted her report that Plaintiff is "'so unintelligent' that she really isn't able to hold a job, can't meet the demands of a job, etc." (TR 160). The doctor noted that Plaintiff's report emphasized physical problems and she seemed to have very little insight about her psychological difficulties. (TR 161). He noted Plaintiff's report that she was in regular education classes in school. (TR 162). The doctor described her as cooperative during the testing session but very limited and very withdrawn with an undertone of anger and irritability. (TR 161).

On the Wechsler Adult Intelligence Scale III Plaintiff had a Verbal IQ Score of 67 (extremely low range), a Performance IQ Score of 73 (borderline range) and a Full Scale IQ Score of 67 (extremely low range). (TR 161). The doctor reported that Plaintiff's "overall level of intellectual functioning [was] within the upper end of the mild range of mental retardation at the 1st percentile of her age group in the general population." (TR 161). Dr. Goldstein opined that "while the scores are certainly reflective of her current level of functioning, the scores are as low as they are primarily because of emotional difficulties, which, in turn, led to limited and inadequate educational exposure." (TR 162). The doctor reported that it is his "opinion that her judgment is so poor, the level of depression is so significant that in spite of adequate math skills, I really don't believe she is capable of handling her own funds." (TR 163).

On May 19, 2005 Dr. Goldstein performed a psychological examination. (TR 156-58). Dr. Goldstein reported that Plaintiff's contact with reality was "adequate but tenuous," self-esteem was enormously diminished, responses were slowed, she expressed some paranoid ideas about people looking at her or talking about her, and she was "depressed, irritable, angry, easily frustrated, [and] somewhat suspicious." (TR 156). Dr. Goldstein listed Plaintiff's activities as being able to cook, clean and maintain her hygiene but noted that he had the "impression that she is frequently dependent on others to assist her." (TR 156). He diagnosed on Axis I major depression without

6

psychotic features (296.3) and alcohol dependence in early full remission (303.9). (TR 157). On Axis II he diagnosed mixed personality disorder, paranoid traits, borderline traits and dependent personality traits (301.9) and assigned a GAF of 48.5. (TR 157). He opined that she cannot manage her own benefit funds. (TR 157).

Leonard Balunas, Ph.D, psychologist, completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment dated June 1, 2005. Dr. Balunas assessed Plaintiff with affective disorders evidenced by depressive syndrome (12.04), mixed personality disorder (12.08) and substance addiction disorders (12.09). (TR 130-31). Dr. Balunas opined that Plaintiff has moderate functional limitations in restriction of activities of daily living, difficulties in maintaining social functioning and difficulties maintaining concentration, persistence or pace with no episodes of decompensation. (TR 138). Dr. Balunas reported that due to these diagnoses Plaintiff is "moderately limited in her ability to remember and carry out detailed instructions, maintain prolonged concentration, interact appropriately [with] the general public [and] respond appropriately to criticism from supervisors" yet he concluded that "[d]espite these limitations, she is able to perform unskilled work." (TR 126).

## 2. *Physical Impairments*

Plaintiff underwent a state agency physical examination with L. Banerji, M.D., on July 8, 2005. (TR 152). The doctor noted Plaintiff's report of lower back pain on and off for the past twelve months without history of injury, and that she can manage her housework and lift twenty pounds from the floor and carry it a distance of twenty to thirty feet. (TR 152). Dr. Banerji diagnosed an "[a]lleged history of multiply (sic) joint pain, but there is (sic) no significant abnormal physical findings or functional limitations noted in the examination." (TR 153). Dr. Banerji also

7

reported a diagnosis of depression and noted that her memory was "good," she was "in fair grooming and hygiene" and "responded fairly well to the examining situation." (TR 153).

    **C.**     **Vocational Expert**

The Vocational Expert (VE) testified that Plaintiff does not have any sustained relevant work history. (TR 179). The ALJ asked the VE what light unskilled work is available in the metropolitan area of Detroit, the state and the country. (TR 179). The VE testified that in southeast Michigan there are approximately 170,000 jobs as a visual inspector, hand packager, station assembler, and material handler, 35,000 counter clerk jobs and 6,000 janitorial positions that are light and unskilled. (TR 180). The VE testified that the numbers are double for the state and that for the country there are approximately 900,000 unskilled light jobs in the industrial setting, 200,000 counter clerk positions and 90,000 janitorial jobs. (TR 180). The VE testified that his testimony conformed with the Dictionary of Occupational Titles (DOT) except that the DOT lists janitorial work as being performed at the medium level of exertion. The VE testified based partially on his own experience that janitorial work exists from the light to heavy exertional level, depending on the work setting. (TR 180).

The ALJ asked whether Plaintiff would be able to work if they accepted her testimony regarding emotional difficulty such as "being around people, following any type of simple routine instructions, routine orders, routine patterns during the day and working anything on a sustained basis." (TR 181). The VE testified that she would not be able to work.

**IV.**     **<u>ADMINISTRATIVE LAW JUDGE'S DETERMINATION</u>**

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since 2005 and suffers from severe depression, mild mental retardation, a history of alcohol abuse reportedly in remission and a history of occasional marijuana use, she does not have an impairment

or combination of impairments that meets or equals the Listing of Impairments. (TR 26). The ALJ found that Plaintiff had the residual functional capacity to perform unskilled light work offering a simple routine, she is able to perform a significant number of jobs in the economy and therefore she is not suffering from a disability under the Social Security Act. (TR 26-27).

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial

evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     she was not presently engaged in substantial gainful employment; and

(2)     she suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. § 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See id.* at § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff appears pro se before the Court and the Court is mindful that it is required to construe Plaintiff's pro se pleadings liberally and hold them to "less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Plaintiff's Motion

For Summary Judgment filed on April 5, 2010 (docket no. 15), makes only the general allegation that Plaintiff is "ADA Act (sic)." It makes no specific allegations of deficiencies in the ALJ's decision. Plaintiff has twice filed with the Court a letter dated August 28, 2009 which sets forth specific allegations of the medical disabilities claimed by Plaintiff and alleged errors in the ALJ's decision denying her benefits. (Docket nos. 1, 13). In addition to reviewing the ALJ's decision in full, the Court has also consider the Plaintiff's arguments in the August 28, 2009 letter.

**C.    Analysis**

In response to the ALJ's finding that Plaintiff suffers from the severe impairment of "a history of alcohol abuse reportedly in remission and a history of occasional marijuana use," Plaintiff argues that she has been alcohol and drug free for several years. (TR 26, Docket nos. 1, 13). The ALJ did not err in considering Plaintiff's history of alcohol abuse. Under 42 U.S.C. § 423 (d)(2)(C) and 20 C.F.R. § 416.935(b)(1) the ALJ is required to make a determination about whether alcoholism or drug addiction is a contributing factor material to a disability determination. The ALJ did not err in mentioning the history of alcohol abuse in remission and occasional marijuana use.

The ALJ found that there "is no evidence that the claimant's mental impairment has a significant impact on her ability to focus and maintain concentration when she is not drinking or smoking marijuana." (TR 25). The ALJ's did not sufficiently explain this finding and is not supported by substantial evidence. In November 2004 Dr. Soni opined that Plaintiff's concentration, attention span, insight and judgment were impaired and her prognosis guarded yet Dr. Soni also noted Plaintiff's report that she last drank five months prior to the psychiatric evaluation. (TR 146). Dr. Balunas opined that Plaintiff has moderate difficulties in maintaining concentration, persistence and pace. (TR 138).

11

Where more examiners noted Plaintiff impairments in concentration, persistence and/or pace, the ALJ has not adequately explained his finding that Plaintiff has no difficulties in this area minus her past alcohol abuse and occasional marijuana use.

Plaintiff also points out that her IQ score of 67 places her in the upper end of the mild range of mental retardation, she has additional diagnoses of severe depression and mixed personality disorder as diagnosed following a psychological evaluation and testing in May 2005 and Major Depressive Disorder, single episode, as diagnosed by Dr. Soni. (TR 146, docket nos. 1, 13).

The ALJ found that Plaintiff has the severe impairments of mild mental retardation and severe depression. (TR 26). The ALJ measured the severity of Plaintiff's mental disorder of depression in terms of four functional restrictions, known as the "B" criteria, by determining the frequency and intensity of the deficits. *See* 20 C.F.R. § 416.920a(c)(3). The ALJ determined that Plaintiff had mild limitations in activities of daily living and social functioning and no limitations in concentration, persistent and pace "when she is not drinking or smoking marijuana" and has had no episodes of decompensation. (TR 25).

There is no discussion in the ALJ's decision of whether he considered Plaintiff's IQ score and diagnosis of mild mental retardation within the criteria set forth in Listing 12.05. 20 C.F.R., Pt. 404, Subpt. P, App. 1. To meet the listing for mental retardation, Plaintiff must show that her condition satisfies both the diagnostic description of mental retardation and any one of the four severity criteria. *Id*. § 12.00A. Pursuant to Listing 12.05, "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." Sub-part C requires "[a] valid verbal, performance,

or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Sub-part D requires "[a] valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." Pt. 404, Subpt. P, App.1 Listing 12.05D.

"In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Ch. 11, pt. 404, Subpt. P, App. I, 12.00D(6)(c). Plaintiff has a full scale IQ of 67, which meets the first requirement of sub-part C[1]. The ALJ also found that Plaintiff has the additional severe impairment of depression, which fits the second requirement of sub-part C. (TR 26). "If the claimant has an additional physical or mental impairment(s) which is "severe" within the meaning of 20 C.F.R. §§ 404.1520(c), and 416.920(c), it will be considered to impose an additional and significant work-related limitation of function in accordance with Listing 12.05C." *Smith v. Astrue*, 2009 WL 1889463 at * 6 (D. Kan. 2009) (citing 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00A and *Hinkle v. Apfel*, 132 F.3d 1349, 1352-53 (10th Cir.1997)(reaching the same conclusion before the regulations were changed in 2000 to specify the equivalence between "severe" impairments and "additional and significant work-related limitation of function.")).

---

[1]Dr. Goldstein noted that he believed "we are getting a legitimate picture of her abilities and that she made a sincere effort to do well on the tests and that is obviously particularly evident in the math score that she obtained." (TR 162).

Despite finding that Plaintiff suffers from mild mental retardation, there is no evidence in the ALJ's decision show whether he considered Plaintiff's mild mental retardation in accordance with Listing 12.05. Further, there is no determination whether Plaintiff's deficits "manifested during the developmental period," i.e., whether the evidence demonstrates or supports onset of the impairment before age 22. Listing 12.05A. The record contains statements that Plaintiff did not attend special education classes in school, yet it also shows that Plaintiff did not complete school beyond the eleventh grade and there is no evidence of sudden trauma which may have resulted in retardation. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (Other appellate courts have found that "absent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout [claimant's] life"); *McPeek v. Sec'ty of Health and Human Servs.*, 1994 WL 56929, 19 F.3d 19 (6th Cir. Feb. 24, 1994).

The Court finds that the ALJ has not shown that he engaged in an evaluation of Plaintiff's impairment(s) pursuant to Listing 12.05 and his findings regarding the "B" criteria related to Plaintiff's mental impairment of depression are not supported by substantial evidence. The Court is unable to provide the missing evaluations of the evidence and a remand for further proceedings in accordance with this opinion is appropriate.

Specifically, the case must be remanded back to the ALJ so that he may: (1) Assess Plaintiff's severe impairment of mental retardation in accordance with Listing 12.05, (2) explain and re-evaluate, if necessary, Plaintiff's mental limitations in accordance with the "B" criteria and (3) if warranted, make a new RFC finding and conduct a new step-four and step-five analysis.

## VI.    CONCLUSION

For the reasons set forth herein the ALJ's opinion is not supported by substantial evidence. Defendant's Motion for Summary Judgment (docket no. 16) should be denied, that of Plaintiff (docket no. 15) granted in part and the case remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings as set forth herein and a new determination at steps four and five if necessary.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: September 30, 2010          s/ Mona K. Majzoub
                                                 MONA K. MAJZOUB

UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Belinda Denise Jones and Counsel of Record on this date.

Dated: September 30, 2010        s/ Lisa C. Bartlett
                                              Case Manager